The first case for argument this morning, Tuesday, March 13, 2018, is 17-1677, District of North Dakota, Joe R. Whatley, Jr., etc. v. Canadian Pacific Railway Ltd. Good morning, Your Honors. May it please the Court, I am Robert J. Keech, counsel for the trustee of the wrongful death trust that was formed pursuant to the Chapter 11 plan of liquidation for Montreal, Maine and Atlantic Railway Ltd. The plaintiff below as the assignee of the so-called world fuel entities, the shippers in this case, and their insurers, and the Irving Oil entities, the so-called consignee, and their insurers. The Chapter 11 plan was confirmed with the full consent of the appellees by the U.S. District Court for the District of Maine. Despite C.P. and its affiliates, the appellees, stating under oath and under penalties of perjury that the April 4, 2014, notice, the so-called April notice, was the relevant notice of claims by the world fuel entities under the Carmack Amendment. And, therefore, necessarily that any applicable time period, if any, ran only from C.P.'s April 24, 2014 response, making the action below timely commenced under any circumstances. The court below dismissed the action as untimely, using an earlier notice, one clearly labeled as not a notice under the Carmack Amendment, specifically reserving all rights under the Carmack Amendment, and stating that Carmack claims would be filed at a later and indeterminate time. And C.P.'s earlier response, which was only to that first notice under Canadian law, and which was neither final nor conclusive, the court below used those notices and that response to trigger the time period and to determine that the case was untimely filed. As far as information is concerned, were the Canadian notices, did they cover all the bases that a Carmack notice would normally have? Well, in this case, it clearly did not, Your Honor. In this case, the world fuel entities decided to break the notice into two pieces, specifically because the situation was completely fluid as between both what was going to happen in Canada and what was going to happen in the U.S. That's why they said in that notice that it was without waiver or limitations whatsoever as to the right to the notifying parties under U.S. law, including the Carmack Amendment. Would what happened in Canada cut down the liability of the Carmack liability-prone people here? It would have actually ended up increasing it. What World Fuels did with the first notice was say that there were claims that could arise to third parties under Canadian law and that there were claims, possible claims, direct statutory claims under Canadian law. With respect to the Carmack Amendment claims, which extend to all foreseeable damages arising out of the derailment, those damages were still being developed at the time the notice was given, which is what World Fuels pointed out. For example, it was not clear exactly what claims would arise from the accident itself, whether there would be something beyond the wrongful death claims, personal injuries, for example. Environmental claims at that point in time were still being determined. Is the key here, though, the notice or the actual response to the notice, the denial? Yeah, it's both, Your Honor, in the sense that – excuse me. Let me do part two and then I can come back. Part two is didn't the denial to the first notice pretty clearly deny any liability whatsoever? Maybe not specifically saying Carmack, but with the denials, it would include a Carmack claim. I would disagree with that, Your Honor. I think they were clearly only denying the Canadian claims, but more importantly, if the notice itself is insufficient, the response to the notice can't trigger the Carmack time periods. And the cases are pretty clear on that point, including the cases cited by the appellees. For example, one of the cases they cite – I thought the key was notice of denial, not so much the notice of a claim. Sure, but unless there's an original claim that's adequate, the denial of that inadequate claims notice starts no time periods. A case they cite, American Rock Salt v. Norfolk Southern, specifically states that a notice that says we will file a claim in the future at some indeterminate time is not a valid Carmack notice and therefore can't start – it doesn't create a response obligation and doesn't trigger any form of response deadline. Another case they cite, Burtman Iron Works, which cites the standard for denials under a consolidated rail, combustion engineering versus consolidated rail, makes it clear that unless the original notice is valid, the nine-month and two-year time periods can't start. That same point is made in American Rock Salt. So if the original November notice wasn't an adequate Carmack notice, which it clearly wasn't, because it states that their claims will be filed at a time in the future, no time period started running. Do any of those cases involve a response that says something to the effect we deny all liability, including a Carmack claim? I don't know that they're that specific, but neither is CP's. It doesn't say that they're denying any Carmack claim. The November response simply lays out reasons in the tariff why the Canadian claim is being denied. And importantly, in the April response, they don't say the earlier response was – Let's suppose that that was the response to the first notice. We deny all liability, including any potential Carmack claims. Would you say it starts to run at that point? No, it wouldn't, because the original November notice was not a Carmack notice. Until the claimant actually gives a qualifying Carmack notice, it doesn't matter what the response is at that point. And CP, I think, clearly recognized this. What case supports that proposition? There are a number of cases. American Rock Salt is a case cited by them. American Rock Salt versus Norfolk Southern stands for precisely that point. It says the 2B period can't start unless there's an adequate notice. What role do the regulations play in what timeline applies? Well, the regulation here is simply – What they refer to as the regulation is a portion of a foreign bill of lading, which railroads can use in connection with setting the time periods. But all of the cases, even after the regulation, make two things very clear. The regulation is not itself a statute of limitations. Unless the regulation and the time periods are incorporated into the bill of lading, it has no effect. In other words, the time periods are contractual periods, not statutory or regulatory. Well, there is a statute that says – that's a floor, correct? The statute is the floor, right, but not the ceiling. What the district court's ruling below would do is turn the floor into the ceiling. And that's not – there's no case that supports that. Where in the record is the bill of lading, in this case, that would tell us whether or not those regulations had been incorporated into this agreement? Yeah, and that's precisely the problem, Your Honor. And that's precisely why the district court erred. The record doesn't contain – it contains the bill of lading, which incorporates by reference or attempts to incorporate by reference certain terms and conditions. It's not at all clear what those terms and conditions are that are being incorporated. And under the Fourth Circuit opinion in ABB, that would be insufficient to incorporate any terms and conditions. But more to the point, even if that were a specific reference to the tariffs that CP says contain these limitations, the tariffs were not part of the record below at any point in time. The district court did not have before it the language that would have been incorporated that would have created the time periods. And it's a distinct issue of fact below as to whether or not CP and Soo Line successfully incorporated any of their tariffs whatsoever. Under the ABB line of cases, they clearly did not as a matter of law, in which case the limitations periods would not apply at all. Is there anything in the record as to why that's not in the record or whether those terms and conditions are available to actually answer the question whether or not this uniform bill of lading regulation timeline is incorporated or some other timeline? Sure. Well, this was CP's motion for judgment on the pleadings and their motion for summary judgment. And frankly, I can't tell which standard the district court was applying. But if CP wanted to include those tariffs, they certainly could have included as part of their judgment on the pleadings record or their summary judgment record, and they did not. And frankly, even if they had, there would have been a factual issue as to whether they had successfully incorporated those tariffs into the bill of lading. The bill of lading makes no specific reference to particular tariffs. It says simply that CP's, quote, general terms and conditions are incorporated. And that's what's missing, you're saying? And that's what's missing is what the general terms and conditions are. And more to the point, again, as a matter of law, under the ABB case out of the Fourth Circuit and the Chartist-Seguris cases out of the Southern District of New York, that reference by itself wouldn't incorporate those provisions anyway. It would be inadequate as an incorporation as a matter of contract. And therefore, the time limits would never come in. But more to the point, even if that was a proper incorporation by reference, the record below contained none of those tariffs. And therefore, there was nothing for the district court to look at to determine whether or not there were contractual limitations that were applicable here. Am I mistaken? I thought that the appendix, the so-called regulation, the uniform bill of lading applied to, by regulation, applied to all train shipment. What the regulation says is that carriers are supposed to use the uniform bill of lading. But what the case law says very clearly is, one, the uniform bill of lading is not automatically incorporated by reference into any bill of lading. You have to actually specifically incorporate it. And two, the time periods are subject to negotiation. And cases decided after the rule was in place, including railroad cases, are uniform. There's not a single case to the contrary say that the uniform bill of lading is not incorporated automatically by reference. In fact, the Fourth Circuit has said, again, after the regulation was passed, that determining whether, in this case, the appellant's claim under the Carmack Amendment is contractually time-barred requires examination of any bill of lading that may have been issued, as well as the documentation concerning the filing of the claim and the disallowal. In this case, in Xiao, in the Fourth Circuit, Xiao v. Linked Cargo, cited in our brief, none of this information is contained in the record presently before us, and it would have to be developed to resolve the claim's timeliness if the Carmack Amendment applies. That exact situation applied below. What the district court should have done was to deny the motion for judgment on the pleadings, and deny the motion for summary judgment to the extent that they were bringing one, and allow development of the record as to, one, whether these terms and conditions were incorporated, whether any contractual limitations applied or not, and what they were. None of that information was before the district judge. Beyond careful lawyering, was there any particular reason that the Canadian notice so explicitly rejected the Carmack notice matter? Yeah, I mean, I have to put my, remember, we're in Assanese, so I'd have to put myself inside the brains of the world fuel entities, but it would appear to have been the prudent thing to do because it was impossible at that point in time for world fuels to know what its Carmack damages were. And there's a long period of case law, a long series of cases, that stand for the proposition that you don't have to give any notice under Carmack until you can reasonably determine what your damages are. The sort of prudent course is to do what world fuels did here with their April notice, which is to tell people what you know your existing damages are, but make it clear that you're going to file claims for subsequent damages. So I can only assume that the reason that they did that, Your Honor, is because the damages were fluid at that point in time, and frankly remain fluid to this day. The other, even beyond which notice was the proper notice, and incidentally, as we said, we think that the November notice, in addition to the fact that it expressly says it's not a Carmack notice, would not qualify as a proper Carmack notice under the American Rock Salt case. In addition to that, the Chapter 11 plan told the statute of limitations periods or the limitations periods or the contractual periods, even if they had been properly applied. Under the tolling provisions of the plan, which only the United States District Court for the District of Maine had the right to construe, even under the November notices, the suit was timely. Well, let me ask you about that. I think it's Section 1.16 of the settlement that does the tolling? It's in the settlement agreement, but it's also directly in the confirmation order, Your Honor. So we're not relying on the settlement agreement language. We're relying on the language of the confirmation order. Well, let me see if I understood. Doesn't it toll claims against MMA and the world fuel entities and the released parties? The settlement agreement language does, Your Honor, but the confirmation order language tolls all periods of time, including this lawsuit, as set forth in the confirmation order language. And the confirmation order language clearly tolled this time period. You think it tolls entities that weren't a party to the settlement agreement? Well, in this case, CP was a party to the confirmation because they consented to the confirmation of the plan. The plan of – we're not relying on the settlement provision. We're relying on specific language in the confirmation order. The confirmation order was entered with CP's consent. As part of a settlement with CP in which we gave them – we negotiated a judgment reduction period, not applicable to this case, but a judgment reduction provision in exchange for which all these provisions were tolled. And it's not as narrow as the settlement agreement. It applies broadly and clearly applied to this case. The district court, in fact, recognized that, but misconstrued the counting of the tolling period by, frankly, just misconstruing and misunderstanding an amendment to the settlement agreement. But again, it would only affect the settlement agreement tolling period and not the confirmation order tolling period. So we're timely whether we're clearly under the April notice, which we think Carmack and the language of those notices dictates, but we're timely even under the November notices used by the district court because of the tolling period. And importantly, one of the things CP consented to about the tolling period and the confirmation order was that issues around the confirmation order, including the tolling period, were subject to the exclusive jurisdiction of the Maine District Court. If the tolling provision became an issue below, what was proper for the judge to do at that point would have been to defer the United States District Court for the District of Maine, which might have referred it to the bankruptcy court, for an interpretation of the tolling provision, which we think would have completely changed the outcome. He shouldn't have ruled on it at all. When the district court, in fact, ruled on it, he misconstrued the tolling provision, which would have made this action timely under any set of circumstances. And we think that was critical error. There are a number of other issues raised by CP, including issues not reached by the district court, and I'll just touch on those briefly, Your Honors. First, the claim that we hadn't stated a prima facie case in the complaint is negated by authority of this circuit, Minneapolis, St. Paul, and Sault Ste. Marie, Railroad Company versus Metalmatic, which specifically notes that even if, which would say in this case, that even if Royal Fuels knew of the improper classification, CP could still be liable under CARMAC since the improper classification was known to them and apparent to them. Even if that classification had been entirely secret, it doesn't destroy the cause of action. It merely switches our burden at trial to prove that they contributed to the damages. They claim this is a contribution claim. It's not. It's a direct claim by an S&E. And we have assignments from the insurance companies and the parties themselves, which gives us all of the causes of action we need on a direct basis. They claim that we reached, we're trying to reach for damages beyond the CARMAC amendment. Again, we're not. The Supreme Court has said for a long time that damages under the CARMAC amendment include all foreseeable damages arising out of the failure to deliver. And the Fourth Circuit has said that reaches payments made to settle claims. The Eighth Circuit is on board with this doctrine in a case called Caspi versus AAA Con, but obviously the Supreme Court is enough. Whether damages are foreseeable is obviously factual. And I think that addresses, unless Your Honor has other questions, I'll save my two minutes of my three minutes. Very well. Thank you, Mr. Chief. Thank you. Good morning. Court needs only decide four issues to decide this case. The first issue, and one of those issues, is automatically decided if you decide the first two in our favor. The first issue is whether the regulation makes the two-year, nine-month statute of limitations a contractual provision of the bill of lading. And it does. I mean, 49 CFR 1035.1 says that all rail carriers and water carriers are required to use the straight, uniform straight bill of lading. And that's automatically decided. Is that non-negotiable? So there's no situation in which the parties could negotiate a bill of lading that had terms that were consistent with the statute, but not the specific timeline of the regulation? Well, the regulation says all common carriers except express companies engaged in the transportation of property other than livestock or wild animals by rail or by water subject to the Interstate Commerce Act are required to use the straight bill of lading. And it's interesting, because it says required, and yet your opposing counsel says that the case law is suggesting, or saying maybe even, that that's a negotiable term so long as it doesn't violate the statute. Can you speak to that issue in the case law? I think the cases that he cites are cases that are motor carrier cases, and the motor carriers are not bound by this regulation, are also cases where, the ComSource case are cases where the Union Pacific Railroad tried to negotiate down this provision and make it one-year statute of limitations rather than two-year statute of limitations. And I think that the statute, or the reg, provides that we're required to use this unless we negotiate otherwise, and we did negotiate otherwise. And the Staggers Act would allow us to negotiate otherwise, but we didn't do that, so this was incorporated by reference. So I understand your position. You agree that the word required doesn't mean required. You would negotiate it otherwise? Well, it's a little, railroad law is a little bit complicated. I agree. Say again? I agree. And I'm sure Judge Beam would agree. 25 years worth. Yeah, I know that. You also handled my case, the derailment in Minot, North Dakota. But anyways, the Staggers Act came in after this regulation. And this regulation came in before the Staggers Act. The Staggers Act allows other negotiations, and Union Pacific Railroad has attempted to negotiate one-year statute of limitations, one-year limitation period as a matter of contract in the bill of lading, sometimes successfully, sometimes not successfully. And the ComSource food service case is a good example of that, where they didn't incorporate it. But the distinction between this case and the ABB case, which is cited by plaintiffs and appellants in this case, is that what is, there's no regulation regarding limitations of liability. There's no regulation regarding restricting in any way the liability that a carrier would be forced to bear. And as a result of that, as a result of that, the carrier needs to incorporate that limitation of liability into the contract, into the bill of lading. Whereas in this case, it's akin to when tariffs used to be filed. The shippers were charged with knowing what the tariffs said. And in this case, the situation is such that the tariff isn't filed, but the regulation is on file, and the shippers are charged with knowledge of what the regulations say. And you're dealing with a sophisticated shipper here, world fuels entities. So I think under the circumstances, you can negotiate lesser or more, but if you don't negotiate as a matter of default, this regulation applies. Do we have any of the terms and conditions that would tell us whether or not, in other words, is the record lacking in information as to whether or not those were incorporated or repudiated? The record shows nothing that would indicate repudiation, and the regulation is such that the regulation says that we're required to use this bill of, uniform straight bill of lading. I always goof that up. And the regulation is something that the shipper can be charged with knowledge of, just as all the regulations are. The second issue is the issue that Judge Beam was getting on, is the notice, the November 2013 notice, sufficient notice for purposes of CARMAC? And I think, to start with, it's not the notice that matters. It's the denial that matters. And in the denial, which was November 27, 2013, everything was denied. All damages were denied. And in particular, they said because of the shipper fraud, because of the shipper fraud in sending commodities lading there that didn't meet the volatility and flammability requirements, that there was a complete denial of all claims. Now, there wouldn't be any change when they got around to doing it April of the next year of 2014. The fact of the matter was they denied all claims. And the notice that Mr. Keech seems to seize upon, and that's the notice of claim, notes that the bill of, in paragraph 24, excuse me, in paragraph 23, the notice of lading had made the claim previously and in 25 it made the same notice again. And it's regarded as a purported notice. So under the circumstances, there certainly is a situation where the denial was absolute. The denial was disallowing. Mr. Keech says it's the notice that matters, though. It's not the notice that matters. The cases are clear on that point. The cases make that clear. The car transportation case, the Gulf, Rice, Arkansas versus Union Pacific, the Adams Express case versus Kroeniger, which is a United States Supreme Court case. One of the problems with this is usually the amount that's claimed is the amount that's shipped. And as a result of that, a lot of the case law, and I found it a little... By that you mean the value of the, in this case, the oil, right? Well, in this case, the oil, but usually it's a much smaller amount and the cases that are decided are decided by the courts of, excuse me, the district courts, the trial courts. And as a result, we cited a lot of F-sub cases to this court, which is somewhat of a problem because this court is used to getting A-circuit or Supreme Court cases cited to it. And the nature of these claims is such that they're not of the size that they usually are. And as a result of that, we've cited a lot of district court opinions to this court. And I apologize for that, but that's the situation. Because usually what they're talking about is the value that is shipped. And the value of that is usually less than it matters to get to this court. In this case, where there's a billion dollars at stake, maybe getting to this court makes some sense. The third question is whether the lawsuit was commenced within two years or not. And if the court decides the first two that the regulation imposes the contractual statutory limit and decides the second case that the notice was adequate under the circumstances, the third issue is answered automatically because I don't think there's any dispute that the lawsuit was started more than two years and one days after the November notice. And the fourth question is whether the notice that was filed was timely. And I think that it's not. Certainly, on one hand, they argue that they're entitled under the Bill of Lighting to make the claim. And on the other hand, they argue that somehow or another they're not bounded at all by the terms of the Bill of Lighting. And they can't have it both ways. They can't have an indefinite statute of limitation. Either they're entitled to file under the Bill of Lighting or not at all. So either the Bill of Lighting binds them or the Bill of Lighting doesn't bind them. And there's an important distinction, Your Honor, between the time requirements of the Bill of Lighting which the regulation makes applicable to rail carriers and water carriers and the limitation of liability which no regulation even addresses. And the ABB case, for example, is the premier case on that. It talks about the limitation of liability provisions of the Bill of Lighting. Whereas the regulation, there's no regulation that deals with any kind of limitation of liability. And when CFR 49 CFR 1035.1 makes that applicable and makes applicable the Bill of Lighting which is in part of that 2B and that's what contains the statute of limitations, the contractual statute of limitations that as a matter of law is applicable to these parties. And in looking at the 5K logistics case, the American rock salt case and the car case all talk about that this statute or this regulation is applicable to rail carriers and water carriers and makes that provision applicable to those carriers. And there's no case that suggests that it's not applicable. The cases maybe aren't as clear as they could be, but there certainly isn't any suggestion that they're not applicable. And all that is necessary, you don't have to refer to the Carmack Amendment in the claim. All that is necessary is that you make a written claim, that it be timely and that you intend to hold the carrier liable. And under the circumstances, while it is true that the damages were somewhat up in the air, they're certainly not up in the air now. The damages were the amounts that World Fuels Entities and Irving settled for which is about $110 million and about $70 million Canadian. So under these circumstances, they can quantify it. And the Gulf Rice, Arkansas case versus Union Pacific said that even if you don't have, excuse me, it was the American, Roxhaw case, that said even if you don't have the exact time and exact amount necessary, you can make the filing of the claim indicating the category of damages that fall in. And as World Fuels Entities did, they did get the categories of damages. The important thing is it's not the nature of the claim. For example, the Zarnowski, McCather versus Eagle transportation company, she made a claim under the common law and the court said that common law claims are not as significant as the Carmack claims and turned the case into a Carmack amendment claim because the Carmack amendment preempts all state law claims. And then... In this case, we've got something a little different though, right? There was no preemption issue with the Canadian claim. So presumably, they had to make a separate claim on the Canadian law, under Canadian law? And what they sought under the Carmack claim was all damages associated with the derailment. So the nature of the damages that they sought were the same. There's no difference between the Canadian claim and the US claim. And once again, it's the response that triggers the two-year period. The response, correct. So it's the timing of the response. So I guess I understand you saying, well, it's not the notice that matters, it's the denial that matters at least for triggering the time period. But I think there's another question there. Is it the notice or the denial that matters for purposes of the content? And that seems to be a slightly different question, particularly where they actually say, I mean, in their notice, we're not claiming anything under Carmack. You're saying that that's not within their sort of power as the person giving notice? They can't do that? Well, they certainly could. They certainly could have made a Carmack claim. I'm sorry. They said this was not a Carmack claim. They said that. The Canadian requirement is three or four months, and the Carmack requirement is nine months. And so they made their early claim with the Canadian regulations and the later claim with the Carmack regulations. But the point of the matter is that they sought the same damages in both. And the November 27, 2013 denial denied everything. So there wasn't any question what would happen when they'd filed a proper Carmack amendment claim. What if they were slightly different? If they weren't exactly the same set of claims? Well, they are. Is that then the definitive reason for why you're arguing that this should be classified as the Carmack notice? No, no. Once again, the operative is the denial, not the claim. And the denial denied everything. It ended up with saying that because you defrauded us about what the lading was, we're denying all the claims. And by denial of all the claims, that resulted in the running of the clock. And the clock begins to run in the Zarnowski case, in the Gulf Rice case, in the Adams Express case versus Kroner, which is a United States Supreme Court case. The clock began to run when the denial was, even though the claim was under the wrong statute. Now, the conflict of law case, the conflict of law treatise that we cited in our brief, talks about a Canadian claim. But the fact of the matter is that denial alone, of all or any part of, all or any part of, the claim for damages results in the running of the clock. And the clock did run. Is it your position that the elements of the Canadian claim and the Carmack claim were exactly the same? The damages were slightly different in that the original Canadian claim made about $2 million, was about $6 million for the cars and the lading. And there was a slight adjustment on the later one. But they talked about all damages associated with the derailment being covered by the Canadian claim. And damages, all damages were certainly sought in connection with the August claim. So the Canadian claim involved Canadian law. The elements of law derived from Canadian law. But, and the Carmack claim may have included those, but didn't because there were some differences in the end. The damages were the same. The time limits were different. The Canadian claim has to be filed within four months, and I think it's nine months for the Carmack claim. So they filed two claims, but the substance of those claims, not necessarily the timing and not necessarily the statutes they were relying upon, but the damages they sought were exactly the same. And that's pointed out in our notice of claim. We said that the Canadian claim was, or the American claim was redundant of the Canadian claim. So the damages sought were the same. Unless the court has any questions, I think I'm done. Thank you, Mr. Thornton. Thank you. Mr. Keech, I believe you have a couple of minutes for rebuttal. CP actually admits, I think, to a fundamental point, which is that the time periods have to be incorporated by reference into the bill of lading in order to be valid. What they claim is that the regulation is a default mechanism that automatically incorporates those terms into any bill of lading that doesn't include them. There's absolutely no authority for that point. And in fact, the Union Pacific case they cite for that point, although it doesn't say that, to the extent that it could be read to make that point, was actually overruled on that point by the Fourth Circuit, something they don't mention in their brief. We didn't find it originally either because it's not red flagged in Westlaw, but if you look at 135, Fed Appeals 849, you find the Fourth Circuit opinion which specifically says that the two-year period was not incorporated by reference into the bill of lading and that the district court erred by doing that. There is absolutely no authority for that point. It's not a default mechanism. More importantly, CP actually isn't arguing that they didn't try to do something with respect to time periods and therefore they need to rely on a default. They're claiming they incorporated their tariffs by reference and they're claiming those tariffs include time periods. So they're not saying the parties didn't negotiate time periods and they needed default. What they failed to do was introduce into the record below what those time periods might have been or to adjudicate the issue as to whether they had incorporated them. Do you agree that the elements of damages that you set forth in the Canadian claim were exactly the same? No, they're clearly not and actually there's no factual authority in the record below to support Mr. Thornton on that point. In fact, the scope of damages under Canadian law is quite different and as he pointed out, the time period was different. What the first notice says is that they're asking for all damages arising out of the derailment available under Canadian law. Those are different than the damages that are available under the Supreme Court's reading of the Carmack Amendment. Is the Canadian law as broad as the U.S. law? No, we would contend that the U.S. law is broader. I'm not sure Mr. Thornton would agree with that but that's an issue for trial. The other thing is I think you have to look at and I appreciate I'm probably past my two minutes but you have to appreciate what CP actually said about both the notices and the response. CP said under oath when it filed its proof of claim that the April 4 notice was a precondition to recovery under the Carmack Amendment. It couldn't possibly be a precondition to recovery under the Carmack Amendment if the November notice was the applicable notice to which they had already responded. They claimed that the November claim was not a valid claim in their November 26 response. Not a valid claim under the Carmack Amendment. They were right. That means their response is meaningless. There's no such thing as a preemptive denial of a Carmack Amendment claim. Once there's a valid claim there can then be a valid denial that triggers the time periods. We don't have that here. Thank you Mr. Keach. Thank you. The court appreciates the arguments today. One thing that's for certain is it is a complex case and we'll do our best to wrestle with it and figure it out and issue an opinion in due course.